John M. Mejía, 13965
John.Mejia@chrisjen.com
Kristen C. Kiburtz, 12572
Kristen.Kiburtz@cjlaw.com
Anna P. Christiansen, 17518
Anna.Christiansen@cjlaw.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| JESSE POTTER,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS ON BEHALF OF ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; DROPBOX INC. AND THE CUSTOM PREMIER PPO 250/20/10,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. 2:26-cv-00772<br><br>District Judge |

## <u>COMPLAINT</u>

Plaintiff Jesse Potter ("Jesse"), by and through undersigned counsel, hereby complains against Defendants, alleging in totality and alternatively as follows:

## INTRODUCTION

Jesse was a participant in a health benefits plan sponsored by his employer and administered by Defendant Anthem Blue Cross ("Anthem"). In or about August of 2020, Jesse underwent surgery on his right leg. About four years later, Jesse was scheduled to have surgery to

have the screws placed during the 2020 surgery removed from his right leg. That surgery was approved and pre-authorized by Anthem. The screw removal surgery was scheduled to take place on December 10, 2024. Unexpectedly, Jesse slipped on some ice on November 28, 2024, fracturing the patella on his right leg. The doctors scheduled to perform the screw-removal surgery informed Jesse that an additional, emergency surgery was necessary to address the new fracture. The doctors informed Jesse that they had secured pre-approval from Anthem and the surgery was rescheduled to December 9, 2024. That surgery went forward and was successful.

On December 11, 2024, Jesse received a letter from Anthem confirming that the surgery was approved. Then, on December 21, 2024, Jesse received an Explanation of Benefits ("EOB") from Anthem in which Anthem covered $32,836.24 of the total bill of $111,145.53. This left an unpaid balance of $78,309.29 which, when added to Jesse's copay for the services ($5,400), amounted to a total cost to Jesse of $83,709.29. The surgery was preauthorized and was an emergency and was therefore covered under the plan, and Defendants underpaying of the claim was an improper denial of benefits.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is, and was at all times relevant hereto, a resident of Utah.

2. At all times relevant hereto, Jesse has been employed by Defendant Dropbox, Inc. ("Dropbox"). He was also enrolled as a participant in the health plan sponsored by Dropbox, the Dropbox, Inc. Custom Premier PPO Plan (the "Plan").

3. Jesse was at all times relevant hereto, a beneficiary under the Plan.

4. Dropbox is the Plan Administrator.

5. Dropbox contracted with Anthem to handle the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

6. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

7. The Plan is self-insured by Dropbox. Anthem determines and pays claims and is a fiduciary of the Plan as defined by ERISA.

8. This lawsuit is brought to obtain an order requiring Defendants to pay or reimburse expenses incurred during Jesse's treatment at the Intermountain Health Care ("IHC") Utah Valley Hospital. The remedies Plaintiff seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g).

9. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

10. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and the location of the Plan.

## FACTUAL ALLEGATIONS[1]

*Allegations regarding the Plan*

11. Dropbox and Anthem issued the Dropbox Inc. Custom Premier PPO 250/20/10 summary of benefits (the "Benefits Booklet").

---

[1] Unless otherwise noted, the information supporting these allegations is contained within the Administrative Record. The Administrative Record is incorporated herein by reference.

12. Upon information and belief, the Benefits Booklet, together with any summaries of material modifications, combined constitute the official summary plan description for the Plan.[2]

13. Dropbox contracted with Anthem to be its service representative to handle the day-to-day administration of the Plan and appointed Anthem as its agent to answer benefit questions, make benefit decisions, pay claims, and process benefit claims and appeals.[3]

14. In general, the Plan pays "Covered Services" incurred by a person while covered under the Plan for charges for services or supplies that are medically necessary for the care and treatment of an injury or sickness.[4]

15. Covered Services include treatment for "Emergency Care," which further includes "medical or behavioral health exams and treatment required to stabilize the patient."[5]

16. For Emergency Care:

> Medically Necessary services will be covered whether you get care from an In-Network or Out-of-Network Provider. Emergency Care you get from an Out-of-Network Provider will be covered as an In-Network services, and will not require Precertification. The Out-of-Network Provider can only charge you any applicable Deductible, Coinsurance, and/or Copayment and cannot bill you for the difference between the Maximum Allowed Amount and their billed charges until your condition is stable and the Out-of-Network Provider has complied with the notice and consent process as described in the "Consolidated Appropriations Act of 2021 Notice" at the front of this Booklet.[6]

17. The Plan is subject to the Consolidated Appropriations Act of 2021 ("CAA"), which includes the No Surprises Act as well as certain Provider transparency requirements.[7]

18. Pursuant to the No Surprises Act and the CAA,

> Emergency Services are covered under your Plan:

---

[2] Benefits Booklet at 1.
[3] Benefits Booklet at 5, 7.
[4] Benefits Booklet at 138.
[5] Benefits Booklet at 59-60.
[6] Benefits Booklet, at 60.
[7] Benefits Booklet, at 1.

- Without the need for Precertification;
- Whether the Provider is In-Network or Out-of-Network.

If the Emergency Services you receive are provided by an Out-of-Network Provider, Covered Services will be processed at the In-Network benefit level.[8]

*Background of Jesse's medical issues and treatment*

19. On or about August 10, 2020, Jesse underwent a surgery where providers performed an open reduction internal fixation of the right distal femur along with a femoral artery bypass.

20. Doctors placed screws in Jesse's femur to ensure proper healing and a lack of movement in the affected bones.

21. A little more than four years later, Jesse arranged to have the screws removed in a surgery that was to take place on December 10, 2024, at Timpanogos Regional Hospital.

22. This surgery was preapproved by Anthem.

23. On November 28, 2024, Jesse suffered a fall in an accident, slipping on ice. As a result of this accident, Jesse severely injured his right knee, fracturing his right patella.

24. On December 3, 2024, Jesse consulted with Dr. Jordan Barker—the physician scheduled to remove the screws from his right leg. Dr. Barker informed Jesse that the fracture in his right patella would require emergency corrective surgery.

25. Dr. Barker further informed only he, Dr. Barker, could perform the emergency corrective surgery that Jesse needed at the IHC Utah Valley Hospital

26. Because Jesse was already scheduled to have the screw-removal surgery with Dr. Barker, Jesse and Dr. Barker concluded that it was most efficient to perform both the screw-removal surgery and the emergency corrective surgery for Jesse's patella at the same time.

---

[8] Benefits Booklet, at 1.

27. Jesse was then informed by Dr. Barker that his office, Revere Health, would handle the pre-authorization for IHC Utah Valley Hospital.

28. Around or about December 6, 2024, Jesse was informed that additional, emergency surgery had been approved, and that the surgeries had been rescheduled for December 9, 2024.

29. On December 9, 2024, Dr. Barker performed the emergency correction for the recent patella fracture, as well as the femur hardware removal. At the same time, Dr. Brian Adams, a vascular surgeon, performed angiography and angioplasty procedures on Jesse's right leg.

30. Following the surgery, on December 11, 2024, Jesse received a letter from Anthem naming Jordan Barker as the provider, and identifying the hospital as Utah Valley Regional Medical Center. The letter stated: "The request you or your doctor asked us to review is approved."[9]

31. The letter continued:

> Thank you for trusting us with your medical coverage. Recently, you or your doctor asked us to review a request for the service listed in the table – and the request has been approved. This approval means that, based on the information given to us, the service is considered medically necessary under your benefit plan.[10]

32. The letter also stated:

> JORDAN P BARKER and UTAH VALLEY REG MEDICAL CTR aren't in your plan's network. Out-of-network providers and facilities like the ones you're using can charge more. They could bill you for the difference between the total amount we allow to be paid and the amount they charge for a service. When you're charged this difference, it's called "balance billing." This doesn't affect your approval – the service is a covered benefit either way.
>
> …
>
> The No Surprises Act may apply. The "No Surprises Act" is a Federal Law which mandates that patients are only responsible for in-network cost-sharing amounts, including deductibles, in emergency situations and certain non-emergency situations where patients

---

[9] December 11, 2024, Letter from Anthem, at 1.
[10] December 11, 2024, Letter from Anthem, at 1.

> do not have the ability to choose an in-network provider (including air ambulance providers). The law also prohibits providers from balance billing except in limited circumstances with patient notice and consent. The act also requires an independent dispute resolution process for providers and plans who cannot reach an agreement on payment.[11]

33. The table included in the letter identified the provider as Jordan Parker. It identified the facility as Utah Valley Regional Medical Center. It identified the in-patient start date as December 9, 2024, with an end date of December 15, 2024.[12]

34. On or about December 21, 2024, Jesse received an EOB dated December 21, 2024 from Anthem stating that Jesse owed $83,709.29 in coinsurance.[13]

35. According to the December 21, 2024, EOB, the total hospital charges for the surgeries was $111,145.53. Anthem paid a total of $27,436.24. Between the $5,400 in coinsurance and the $78,309.29 in services not covered, this left Jesse with a total cost of $83,709.29.[14]

*Jesse's Level One Member Appeal*

36. Following receipt of Anthem's December 21, 2024, EOB, Jesse filed a Level One Member Appeal on July 17, 2025.[15]

37. In his Level One Member Appeal, Plaintiff:

(a) Requested a review of his claim pursuant to his rights under the Employee Retirement Income Security Act of 1974 ("ERISA");

(b) Requested "clear and detailed documentation describing the exact methodology used to calculate the max allowed amount for [his] claim";

[11] December 11, 2024, Letter from Anthem, at 2.
[12] December 11, 2024, Letter from Anthem, at 3.
[13] December 21, 204, Anthem EOB.
[14] December 21, 204, Anthem EOB.
[15] Plaintiff July 17, 2025, Level One Member Appeal.

(c) Requested the "procedures, formulas, methodologies, or schedules to be applied in determining or calculating a participant's or beneficiary's benefit";

(d) Requested a review to determine whether his claim was handled in accordance with the CAA and the No Surprises Act; and

(e) In the event that Anthem denied his Level One Member Appeal, he requested "a copy of all documents under which the plan is operated including all governing plan documents, the summary plan description, any insurance policies in place for the benefits I am seeking, and any administrative services agreements that exist," in addition to "any reports or opinions provided to [Anthem] from any physician or other professional," and "the names, qualifications, and healthcare claim denial rates of all individuals who reviewed this claim or with whom you have consulted about this claim."[16]

*Anthem's Denial of Jesse's Level One Member Appeal*

38. On August 23, 2025, Anthem sent Jesse a letter denying his Level One Member Appeal and upholding the December 21, 2024, EOB.[17]

39. In the letter, Anthem stated:

> Upon review of your complaint, our records indicate the claim was processed correctly according to the terms of your Evidence of Coverage Booklet for Out of Network, Non-Emergency Inpatient Hospital Services. Our records indicate the claim for the date of service December 9, 2024 through December 11, 2024, billed in the amount of $111,145.53 was received on December 17, 2024 and processed on December 21, 2024. The services were processed according to the maximum allowed amount and for this claim it was $ [*sic*] $32,836.24 which the out of network coinsurance applied $5,400.00, and Anthem paid $

[16] *See generally*, Plaintiff July 17, 2025, Level One Member Appeal.
[17] August 23, 2025, Anthem Denial of Level One Member Appeal.

> [*sic*] $27,436.24 to the provider. Since this provider is an out of network provider, you are also responsible for the charges that exceeded the maximum allowed amount for the Out of Network, Non-Emergency Inpatient Hospital Services, in the amount of $78,309.29, for a total liability of $83,709.29.[18]

40. Anthem's denial was wrong. Among other things, Jesse's procedure was an emergency.

41. Jesse has exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA.

42. The denial and refusal to process claims by Anthem/the Plan solely and directly caused Jesse to incur $83,709.29 in charged expenses for his emergency care at IHC.

43. Litigation is Jesse's only option to enforce his right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan and/or under ERISA, the CAA, and the No Surprises Act.

44. Jesse has retained the undersigned to pursue his rights and remedies under ERISA the CAA, and the No Surprises Act.

45. The remedies Jesse seeks herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

**FIRST CAUSE OF ACTION**
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

46. All allegations of this Complaint are incorporated here as though fully set forth herein.

47. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Anthem, acting

---

[18] August 23, 2025, Anthem Denial of Level One Member Appeal, at 2.

as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

48. Anthem and the Plan wrongly refused coverage for Jesse's treatment in violation of the terms of the Plan, which promise benefits to employees for medically necessary treatment in emergency situations and where patients do not have the ability to choose an in-network provider, as detailed in the Plan and codified by the Consolidated Appropriations Act and No Surprises Act.

49. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim refusals/denials and to engage in a meaningful dialogue with Jesse in the pre-litigation appeal process.

50. Anthem/the Plan's processing of Jesse's claims and appeals demonstrate the absence of a meaningful analysis of Jesse's claims and appeals. Among other things, Anthem/the Plan did not engage with or respond to the issues Jesse presented in his appeals and did not meaningfully address the arguments or concerns raised during the appeal process.

51. Anthem/the Plan breached their fiduciary duties to Jesse when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in Jesse's interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of Jesse's claims.

52. The actions of Defendants in denying payment for Jesse's treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

WHEREFORE, Plaintiff seeks relief as follows:

1. Judgment in the total amount Jesse incurred for the treatment at issue herein;

2. Pre- and post-judgment interest to the date of payment;

3. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 21st day of August, 2026.

CHRISTENSEN & JENSEN, P.C.

*/s/ John M. Mejía*
John M. Mejía
Kristen C. Kiburtz
Anna P. Christiansen

*Attorneys for Plaintiffs*